MABEL REES and Others, Respondents, *v.* TEACHERS' RETIREMENT BOARD OF THE CITY OF NEW YORK and Others, Appellants.

First Department, November 4, 1927.

Schools — teachers' retirement in New York city — secretary of board legally elected without concurrence of one teacher-member — Greater New York Charter, § 1092, subd. C, par. 11, does not apply to appointment of secretary.

The plaintiffs contend that the appointment of the secretary of the teachers' retirement board of the city of New York was illegal and seek an injunction to restrain the payment of his salary. The contention of the plaintiffs is that paragraph 11 of subdivision C of section 1092 of the Greater New York Charter provides for the concurrence of at least one teacher-member of the retirement board for a valid election or appointment of a secretary. This contention cannot be sustained, for that provision relates solely to a " decision " of the retirement board and any action not constituting a " decision," such as the appointment of a secretary to the board, is properly taken by a majority vote although a teacher-member does not vote affirmatively in favor of such action.

FINCH, J., dissents, with opinion.

APPEAL by the defendants, Teachers' Retirement Board of the City of New York and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 4th day of August, 1927, granting plaintiffs' motion for an injunction *pendente lite,* restraining defendants from paying any warrants for payment to the defendant Irving Crane of any money as salary as secretary of the teachers' retirement board, on the ground that his appointment was illegal.

---

* Case cited shows antecedents of rule 113 of the Rules of Civil Practice to be also English Rules of the Supreme Court, order 14, rule 1.—[REP.

*William E. C. Mayer* of counsel [*J. Joseph Lilly* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the appellants.

*Leonard M. Wallstein* of counsel [*Ralph M. Frink* with him on the brief], for the respondents.

MARTIN, J.  On this appeal the question is one of law.  The order appealed from followed a determination that the appointment of the defendant Irving Crane as secretary of the teachers' retirement board of the city of New York was illegal in view of the construction placed by the Special Term on section 1092 of the Greater New York Charter.  (See 130 Misc. 442.)

The plaintiffs bring this action as taxpayers under section 51 of the General Municipal Law.  The substance of the complaint is that " No member of said Board elected by the Retirement Association as required by said section 1092 of the Greater New York Charter concurred in " said appointment of a secretary.

There are several members of the teachers' retirement board; the president of the board of education, the comptroller of the city of New York, two members appointed by the mayor and three members elected as representatives of the teachers.

By paragraph 11 of subdivision C of section 1092 of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by Laws of 1917, chap. 303) it is provided: " The concurrence of the comptroller or of one member appointed by the mayor, of a member elected by the retirement association, and of at least two other members shall be necessary for a decision of the retirement board."

The by-laws of the board in article 2 thereof provide:

" Section 5.  Quorum: The concurrence of the Comptroller or of one member appointed by the Mayor, of a member elected by the Teachers' Retirement Association, and of at least two other members, at any meeting shall be necessary for any decision by the Teachers' Retirement Board."

It is argued that this shows clearly the understanding from the outset, of those charged with administering the retirement system that absolutely no action may be taken by the board without the concurrence of one teacher-member.

We are looking for the meaning of the statutory provision and not for the interpretation placed on it by those who adopted the by-law based upon an interpretation suitable to their purpose. The power given by statute may not be enlarged by a by-law.

The plaintiffs seek a determination by this court that the minority of the board chosen to represent the teachers who may become beneficiaries of the fund have the power to prevent it from taking any action whatever not approved by such minority.

All the plaintiffs are teachers in the public schools of New York city, three of them being teacher-members of the board. It is their conception that none but a teacher is qualified to be its secretary.

The appellants contend that the real purpose of this action is to place the retirement board under the control of its teacher-members who are a minority; that it has no other motive, and that if the plaintiffs succeed, such will be the result.

It will be noted that the power given to the beneficiary members by the statute is to prevent the board from making " a decision " without their concurrence. Decisions must be made in connection with the retirement of teachers, the amount of pensions to be paid and related matters.

The question in this case is whether the appointment of a secretary to the board was " a decision."

We believe the appointment of a secretary to the board was a mere administrative detail and could not be properly termed a decision.

This distinction is made in *Matter of Craig* v. *Matthews* (238 N. Y. 88, 95), where a somewhat similar question was before the court. It was there said: " The appointment of such a secretary is neither controlled by the provision of the ordinance providing that a quorum of the board shall consist of four members of whom the comptroller shall be one nor prohibited by the provisions of the ordinance that the comptroller shall keep a journal of the proceedings of the board. * * * That provision for a quorum by its terms is limited to the performance of the duties specified in the article of which it is a part and a mere detail of the methods by which the board should discharge its fundamental duties, such as the appointment of a secretary or the selection of a meeting room would not be governed by the provision."

It was there held that, although the comptroller had to be one of those to vote to discharge the trust and duties vested in the trustees by law, this did not apply to the appointment of a secretary who would discharge the ordinary duties of such an office.

The respondents say that important duties are imposed upon the secretary. The appellants point out that they are solely with reference to administrative details. It is emphasized that one is to countersign warrants. Paragraph 3 of subdivision E of section 1092 of the Greater New York Charter (as amd. by Laws of 1917, chap. 303) and section 2 of article 3 of the by-laws of the board (as amd. July 22, 1919) provide that the secretary shall countersign all warrants or vouchers only after they have been *lawfully authorized by the teachers' retirement board* for payment from the various funds of the teachers' retirement system.

Naturally a restriction such as we are considering should be given no application beyond what the statute requires; for it is unusual to give a minority the power to prevent a board or body from functioning in any respect whatever. We find the purpose of the act in the fact that decisions are to be made from time to time in relation to the service and status of those seeking to actually partake of the fund for themselves as well as in relation to policies, actuarial and otherwise, directly affecting the fund and the system.

In the absence of a clear direction in the statutory provision, we should not extend its application beyond the language used, especially in view of the impractical situation which would result.

The order should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

Dowling, P. J., McAvoy and O'Malley, JJ., concur; Finch, J., dissents.

Finch, J. (dissenting). The order appealed from should be affirmed. Each statute must be construed according to its particular language and purpose. The object of the Teachers' Retirement Law was to place the board of retirement under the joint control of the board of education, the city administration and the teaching staff. It is common knowledge that when the proposed law was under discussion in 1917 the teachers criticised the law because they then claimed that the same placed the control of the board of retirement in the hands of the city administration. In answer to these criticisms, the president of the board of education made this reply: " No, the plan places the Board of Retirement under the joint control of the Board of Education, the City administration and the teaching staff. No action can be taken by the Board without the approval of at least one of the representatives of the teaching staff." Prior to this there had been published by the city administration a pamphlet entitled: " Proposed Retirement Plan for New York City School Teachers." " Each member of the Board has a vote; the vote of one member elected by the teachers, of the Comptroller or an appointee of the Mayor, and of two other members, are required for a decision by the Board."

The anxiety on the part of the teachers then, as it is now, was to prevent the control of these vast funds, gathered for the purpose of the teachers' retirement system, and a major part of which are contributed by the teachers themselves, being placed in the hands of a board which could act without the concurrence of the teachers' representatives and be subject among other things to the vicissitudes of changing administrations. The chairman and the secretary sign the warrants for payments from the funds, and

hence .the appointment of a secretary is equivalent to the selection of a treasurer. No decision more important or vital can be made by this board of retirement than who shall handle its funds. Paragraph 11 of subdivision C of section 1092 of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by-Laws of 1917, chap. 303), known as the Teachers' Retirement Law, expressly provides: " The concurrence of the comptroller or of one member appointed by the mayor, of a member elected by the retirement association, and of at least two other members shall be necessary for a decision of the retirement board."

To hold that a decision as to the retirement of an individual is of more importance than is the selection of those who shall disburse the funds, would seem to be placing the emphasis upon the less important rather than the more important. Paragraph 3 of subdivision C of section 1092 of the charter (as amd. *supra*) provides that the board itself shall choose a chairman and a secretary, so that this choice must be made by the board and in consequence must be a decision of the board. It is no answer to this contention to say that the board is thus placed within the control of the teachers' representatives, since in the same way the board is within the control of the comptroller or of one member appointed by the mayor. Such a contention misses the whole fundamental purpose of the law, which, as already noted, is a board of joint control. *Matter of Craig* v. *Matthews* (238 N. Y. 88) is not an authority in point, since the language of the statute in the case at bar is distinctly different from the ordinance there under consideration. There, as the court was careful to point out, the duty of the secretary was that of a mere recording officer and still further was limited by the requirement that the comptroller should " keep a correct journal of the proceedings." In the case at bar the secretary is substantially the chief executive of the board and countersigns warrants for all payments. In *Matter of Craig* v. *Matthews* the business for which the comptroller's presence was essential to a quorum was limited to the discharge of the trusts and duties vested in the commissioners, whereas in the case at bar the concurrence of a teacher member is required for any decision of the board and the board is expressly required to make a decision for the selection of the chairman and secretary. It is urged that to afford the representatives of the teachers a right to have a necessary vote in all the decisions of the retirement board is to place the control of the board in the hands of these representatives. Such, however, is not the fact, since the only result is not to control the board but to afford to these representatives what amounts only to a right of veto if they do not choose to concur. This right of veto on the part of the teaching

staff is exactly similar to that exercised by the city administration or by the board of education. This result is a desirable and essential part of any board of joint control and prevents the board being controlled by one element.

It follows that the order appealed from should be affirmed, with ten dollars costs and disbursements to the respondents.

Order reversed, with ten dollars costs and disbursements, and ·motion denied, with ten dollars costs.